## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SANDRA GONZÁLEZ JAVIER and CECILIA JAVIER PÉREZ, | CIVIL NO. 10 -1946 (FAB) |
| **Plaintiffs** | |
| **vs.** | MEDICAL MALPRACTICE |
| | TRIAL BY JURY DEMANDED |
| MAYAGUEZ MEDICAL CENTER-DR. RAMON EMETERIO BETANCES, INC.; SISTEMAS INTEGRADOS DE SALUD DEL SUR OESTE, INC.; DR. ROBERTO TORRES AGUIAR; CONJUGAL PARTNERSHIP TORRES-DOE; DRA. GLORIA PONCE TUA; CONJUGAL PARTNERSHIP ROE-PONCE; CONTINENTAL INSURANCE COMPANY; SINDICATO DE ASEGURADORES PARA LA SUSCRIPCIÓN CONJUNTA DE SEGURO DE RESPONSABILIDAD PROFESIONAL MÉDICO-HOSPITALARIA (SIMED); ABC INSURANCE COMPANIES; JOHN DOE AND JAMES ROE; as well as any Other Joint Tortfeasors and Their Respective Insurance Companies. | |
| **Defendants.** | |

## JOINT CASE MANAGEMENT MEMORANDUM

**TO THE HONORABLE COURT:**

**APPEAR NOW** the Parties in this action, jointly through their undersigned attorneys, and respectfully state as follows:

Pursuant to this Honorable Court's *Scheduling Orders* (Docket No. --), the Parties jointly submit the following *Joint Case Management Memorandum*.

## I.      **FACTUAL AND LEGAL CONTENTIONS**

      **A.**    **Plaintiffs Sandra Gonzalez Javier and Cecilia Javier Perez** are the daughter and sister of decedent Benita Javier Perez.

## Nature of Case

This Honorable Court has jurisdiction over the parties and subject-matter of this action, pursuant to pursuant to 28 U.S.C. §1332 (diversity jurisdiction).  Diversity jurisdiction is established as Plaintiff Sandra Gonzalez Javier is a citizen and domicile of the state of Connecticut and Cecilia Javier Perez is a citizen and domicile of the state of Washington, while Defendants are citizens, domiciled, incorporated and/or have a principal place of business in Puerto Rico or a state other than Connecticut or Washington; and the amount in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs, vesting jurisdiction on this Honorable Court pursuant to 28 U.S.C. §1332.  Venue is proper in the District of  Puerto Rico pursuant to 28 U.S.C. §1391 since the events or omissions giving rise to this claim occurred in this district.

Plaintiffs allege that the medical care provided to their mother/sister, Benita Javier Perez (hereinafter referred to as, "patient", "Benita"  or "Mrs. Javier"), during the time she was was treated by Defendants, was below the applicable standard of care, resulting in the patient's eventual death. As a result of the professional negligence, lack of expertise, fault, and malpractice of all Defendants, Plaintiffs lost their mother/sister, a vivacious and industrious person, who they loved very much and were close to. Furthermore, Plaintiffs have been deprived of the joy their loved one brought them and are haunted knowing that his death was preventable if the adequate medical treatment had been executed. Plaintiffs have suffered damages, including but not limited to, mental anguish and ongoing pain and suffering.

**Factual Contentions**

On October 3, 2009, at approximately 3:50 pm, Benita Javier Pérez (hereinafter referred to as "Benita" or "patient"), a 68 year old woman, arrived at the emergency ward at the Mayaguez Medical Center complaining of intermittent chest pain, diaphoresis and shortness of breath.

On October 4, 2009, at approximately 10:30 am, Benita was admitted to the hospital telemetry ward for further treatment under the care of Dra. Ponce Tua.  In an effort to assess Benita's cardiac condition, Benita underwent an catheterization for an angiogram on October 6, 2009, at approximately 11:00 am, at Mayaguez Medical Center's Advanced Cardiology Center, performed by Dr. Roberto Torres Aguiar as assigned by the Mayaguez Medical Center. The cardiac catheterization, which consisted of inserting a probe through the femoral artery of Benita's inguinal area of right leg to examine the heart. At 12:35 pm, Benita was referred for post operative care and monitoring at the Mayaguez Medical Center's telemetry ward. Benita was on anticoagulation therapy, plavix, and beta blockers which made her more susceptible to hemorrhaging. Benita had an unstable angina and awaiting a triple coronary bypass, thereby requiring ever more care and vigilance. Benita should have been referred to the cardiac coronary unit or intensive care unit where she could be monitored closely. Instead, Benita was sent to the telemetry unit where she was placed in an unmonitored bed.

While in the telemetry ward, Benita had pain in right leg, abdomen and her extremities were very cold.  Nursing care was either scarce or totally absent in the telemetry ward after the catheterization  Many hours passed without Benita being visited by a nurse in her room. The nursing care was inadequate and the medical record is absent systematic obtaining and/or recording of patients vitals and nursing assessments of the patient. On October 7, 2009, at approximately 4:30 am, nursing staff notifies resident/doctor that patient is hypotensive.

Resident-doctor in an "On Duty Note" reports patient with painful right leg and swelling, falling blood pressure to 50/30 and a growing abdominal mass that appears to be a hematoma. Patient is ordered transferred to MICU by hospital resident. Hospital staff notified Drs. Ponce and Torres Aguiar at 4:50 am and 4:58 am, respectively. At 5:30 am, Dra. Ponce reported that Patient's abdomen continues to grow and is painful. Patient became bradycardic, unresponsive and pulse less; at 6:00 am ACLS was started and by 6:58 am Benita was pronounced dead.

Physician report's that Benita died of hypovolemic shock as a result of intra-abdominal bleeding. At 6:35 am Benita's body was ordered transferred to the morgue.Benita died as a direct result of the failure to adequately monitor, timely detect, address and treat the femoral bleed resulting in hypovolemic shock at Mayaguez Medical Center.

### Legal Contentions

The Puerto Rico Civil Code, article 1802, generally provides, in pertinent part, that: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 32 L.P.R.A. § 5141.

The leading case on the liability of a hospital for the medical malpractice of a physician is *Marquez Vega v. Martínez Rosado*, 116 D.P.R. 397 (1985). In *Marquez*, Puerto Rico's Supreme Court had to decide whether a hospital could be held jointly and severally liable based solely upon the medical malpractice of a doctor not employed by it, to whom it had granted hospitalization privileges. *Marquez Vega v. Martínez Rosado*, 116 D.P.R. at 406.

"The Court made clear ... that a hospital has a continuous duty to: (a) carefully select the physicians to whom it grants privileges; (b) require that such physicians stay abreast of the most recent developments in their respective fields; (c) monitor the work of such physicians, intervening, when possible, in the face of an obvious act of medical malpractice by one of them; (d) discontinue

the privileges of any physician in the event of repeated or crass acts of medical malpractice; and (e) keep reasonably up to date with respect to the most technological advances." *Recio v. Hospital del Maestro*, 882 F.Supp. at 224 (citing *Marquez Vega v. Martínez Rosado*, 116 D.P.R. at 409-10, 1985 WL 301900), aff'd sub nom *Daniels Recio v. Hospital Del Maestro, Inc.*, 109 F.3d 88 (1st Cir.1997); see also Carlos J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual* 315 (1998); see also *Heddinger v. Ashford Memorial Comm. Hosp.*, 734 F.2d 81, 85-86 (1st Cir.1984) (hospital was found jointly liable for the negligent harm caused by the attending physicians, who were not employed by the hospital).

The Puerto Rico Supreme Court further noted that the relationship of the doctor with the institution was not a relevant factor. That is, the Supreme Court found that in the described situation where the patient seeks for medical help directly at the institution, it did not matter if the doctor who was negligent was an employee of the institution, had privileges to work at the institution or was part of the consulting staff of the institution. *Id*.

When a person goes directly to a hospital for medical treatment and the hospital "provides" the physicians who treat him, the courts favor the joint liability of hospital and private physician for the act of malpractice, *Grewe v. Mt. Clemens General Hospital*, *ante*. It makes no difference whether the attending physician is a hospital employee or not, or a physician granted a "franchise" to offer his specialized medical services to the hospital patients, or a physician belonging to the hospital staff and called in for consultation to treat the patient, etc. *Mehlman v. Powell*, ante; Note, Independent Duty of a Hospital to Prevent Physicians' Malpractice, 15 Ariz. L. Rev. 953, 967 (1973).

The hospital is the one that "provides" the service of the physician, and the patient usually has no option or participation in said choice. *Mehlman v. Powell*, ante; *Mduba v. Benedictine Hospital*, ante; Restatement (Second) of Torts, Sec. 429. To a certain point one can affirm that in this

type of situation the hospital is "guaranteeing" to the patient that said physician, or any other who treats him under those circumstances, is a competent physician who is fit to render medical assistance.

In the second place, from the patient's point of view what he has in "front" of him is the institution as such, not physicians independent and distinct from each other and from the hospital. In other words, for the patients and general public that enter its premises, the hospital nowadays is a total health care institution and not a building where health-care professionals go privately about their business with no further contact with each other. Under these circumstances, it is not unreasonable to apply the doctrine of "apparent or ostensible agency." *Núñez v. Cintrón*, 115 D.P.R. 598 (1984); *Berríos v. U.P.R.*, 116 D.P.R. 88, (1985); *Magwood v. Jewish Hospital & Med. Ctr., etc.*, 408 N.Y.S.2d 983 (1978); Note, Hospital Corporate Liability: An Effective Solution, supra, at 358; D. J. Slawoski, *Do the Courts Understand the Realities of Hospital Practices?*, 22 St. Louis U.L.J. 452, 457-458 (1978).

In the third place, there is no doubt that when a "patient" goes directly to the hospital, the main relationship established is between the patient and the hospital administration. In this case, the physician is seen as an assistant of the hospital, and the institution should be held directly liable for the damage caused by the physician. J. Santos Briz, *Derecho de daños* 374-375, Madrid, Ed. Rev. Der. Privado (1963). And last, although the unsalaried physician could be considered an "independent contractor", there is no doubt that the hospital is the main beneficiary of the work done by the physician, and as such the institution should be held liable for the negligent acts of the physician. Cf. *Martínez v. Chase Manhattan Bank*, 108 D.P.R. 515 (1979).

At all times, the Defendant Mayaguez Medical Center/SISSO General Hospital, Inc., as operator of the Mayaguez Medical Center Hospital in Mayaguez, was negligent in failing to provide

the proper supervision of its employees and agents.  Defendant Mayaguez Medical Center/SISSO, through the medical and nursing personnel, it extends privileges, employs or contracts, failed to exercise due medical care, treatment and caution to prevent Mrs. Javier's eventual death.

Defendant Mayaguez Medical Center/SISSO not only failed to adequately select and supervise the medical and nursing personnel, but permitted the use of its facilities, allowing, encouraging and condoning the negligent care and improper treatment of Mrs. Javier, proximately and directly causing his eventual death and Plaintiffs' pain and damages.

Defendants Mayaguez Medical Center-Dr. Ramon Emeterio Betances Inc. and SISSO offered medical services to Benita Javier Pérez, but failed to staff such institution with the adequate medical and nursing personnel to appropriately treat its patients. In so doing, the Defendants misled those who sought full hospital treatment into thinking that they would be appropriately treated.

In medical malpractice cases, doctors in Puerto Rico are held to a national standard of care. *See Cortes-Irizarry v. Corporacion Insular de Seguros*, 111 F.3d 184, 190 (1st Cir. 1997)(citing *Oliveros v. Abreu*, 101 P.R. Dec. 209, 226-27, *translated in* 1 P.R. Sup.Ct. Off'l Trans. 293, 313 (1973)).  In order to establish a case of medical malpractice under Puerto Rico law, a Plaintiff must establish three elements: (1) the applicable standard of care "(*i.e.*, the minimum standard of professional knowledge and skill required in the relevant circumstances)"; (2) Defendant committed an act and/or omission which violated the applicable standard of care; and (3) a causal connection exists between Defendant's negligence and the claimed damages.  *Cortes-Irizarry v. Corporacion Insular de Seguros*, 111 F.3d 184, 189 (1st Cir. 1997)(citing *Lama v. Borras*, 16 F.3d 473, 478 (1st Cir. 1994); *Rolon-Alvarado v. Municipality of San Juan*, 1 F.3d 74, 77 (1st Cir. 1993)); *see also Santiago v. Hospital Cayetano Coll y Toste*, 2003 WL 21003374, *3-4 (D.P.R. 2003).

Expert testimony is critical to proving a medical malpractice case under Puerto Rico law, and the fact finder (in this case, the jury), is encouraged to rely on credible expert opinions. *See, e.g.*, *Lama v. Borras*, 16 F.3d 473, 476 (1st Cir. 1994). This District Court has previously held that, "[i]n cases of medical malpractice, what is or is not the proper practice is a question for experts and it can be established only by their testimony." *Diaz Colon v. United States*, 178 F.Supp.2d 53, 55 (D.P.R. 2001)(citing *Guzman v. Silen*, 86 D.P.R. 532 (1962)). Plaintiff's liability expert, Dr. Carl W. Adams, located at 101 Becket Lake Driva, Durango, CO 81301. Dr. Adams, is imminently qualified and Board Certified in the field of surgery, including specialized training in thoracic cardio- vascular surgery and critical care will provide his report outlining the breach of standard of care by Defendants.

**B.      Defendants Mayaguez Medical Center Dr. Ramón Emeterio Betánces, Inc., Continental Insurance Company and Sistemas Integrados de Salud del Suroeste ("SISSO")**

**Factual Contentions**:

On October 3, 2009 at 3:20 p.m., Mrs. Benita Javier Pérez, a 68 year old female patient with history of hypertension, diabetes and thyroid conditions, arrived at the Emergency Room of Mayagüez Medical Center Dr. Ramón Emeterio Betánces, complaining of chest and back pain. Upon arrival, the patient was evaluated by Dr. Juan Rivera, who diagnosed chest pain and hypertension, and ordered EKG, Troponin, PT, PTT, INR, CBC + diff, BMP, Chest X-Ray, Catapres 0.1mg PO, ASA 325mg PO, Plavix 300mg PO, Pepcid 20mg IV. Her vital signs were: BP-209/138, P-73, R-21 and T-36.

At 4:05 p.m., the patient was transferred to cardio area and connected to cardiac monitor, as per orders of Dr. Rivera.

On October 4, 2009 at 10:30 a.m., Mrs. Javier was admitted to Telemetry under the services of Dr. Gloria I. Ponce Tua, with instructions to be kept on Holter and Echo Monitoring 24 hours. A Consultation Request was placed with a cardiologist Dr. Marini.

On October 5, 2009 at 6:00 a.m., Dr. Torres Aguiar evaluated Mrs. Javier Pérez, and scheduled the patient for a cardiac catheterization to be performed the next day, in order to better assess her cardiac condition.

On October 6, 2009 at 11:00 a.m., Mrs. Javier Pérez underwent a left and right heart cardiac catheterization done through right and left inguinal/brachial approach, using French catheter system. The procedure ended at 11:05 a.m., without any complication, and the patient was transferred to recovery room for observation.

At 12:35 p.m., the patient presented stable vital signs and no bleeding, and was transferred to Telemetry.

On October 7, 2009 at 4:35 a.m., it was recorded on the Nurse's Progress Notes, that the patient was referring having pain on right leg, and was observed to be weak, pale, and sweaty. The nurse notified the Resident physician, and took Dextro-Stick, CBC, BMP, CKMB,Troponin, PT, PTT, INR, Cross + Match.

At 5:30 a.m., the patient was diagnosed with Hypovolemic Shock, R/O Retroperitoneal Hematoma, CAD and Hypothyroidism, and was transferred to MICU.

At 5:55 a.m., Mrs. Javier Pérez was observed to be hypoactive and unresponsive, and CPR was started. The patient was entubated by Dr. Urrea, and blood transfusion was placed. Resuscitating procedures were done for 50 minutes, but no response was obtained from patient.

At 6:58 a.m., the patient was pronounced dead by Dr. Vélez.

**Legal Contentions**:

The Mayagüez Medical Center Dr. Ramón Emeterio Betánces and Sistemas Integrados de Salud del Suroeste (SISSO), that by means of its medical and nursing personnel, fully complied with the applicable standards of medical care required in Puerto Rico at all times with respect to the treatment and management of Mrs. Benita Javier Pérez.  The appearing codefendants are not responsible for the damages alleged by plaintiffs, as a matter of law.  Moreover, the hospital and SISSO are not responsible for any negligence allegedly incurred by third parties, for whose action the hospital and SISSO are not legally liable.

It is the Hospital's factual theory at this time that Mrs. Javier Pérez' death is not related to any act or omission from the hospital's or SISSO's personnel.  Rather, it was due to the patient's pre-existing medical conditions and/or complications from said conditions.  Thus, plaintiffs' alleged damages do not have any causal relation to the acts or omissions of the hospital or SISSO and/or its medical and/or nursing personnel.

Jurisdiction in the present case is predicated pursuant to 28 U.S.C. § 1332 since the plaintiffs allege the complete diversity of citizenship between the plaintiffs and the defendants. Accordingly, the substantive law of the state in which the alleged negligence occurred, here Commonwealth of Puerto Rico, is applied.

It is our contention, that Mayagüez Medical Center Dr. Ramón Emeterio Betánces and SISSO's nursing and medical personnel did not incur in medical malpractice. It is clear from the medical record that the hospital provided Mrs. Javier Pérez with the generally accepted standard of care that prevails in this jurisdiction under the particular circumstances of this case.   Pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA section 5141, and the applicable case law, in order for a defendant to be held liable to plaintiffs, said plaintiffs must establish: (a)  A duty or

obligation requiring the defendant to conform to a certain standard of conduct and a failure to conform to that standard due to a breach of duty;  (b) A causal connection between the conduct and the resulting injury; and, (c)  Actual loss or damages resulting to the claim.  Ortiz v. K. A. Developers, 136 D.P.R. 192 (1994).

The hospital and SISSO respectfully sustain that, according to Puerto Rico's malpractice law, plaintiffs cannot make a showing of a malpractice claim since: (1) The hospital and SISSO cannot be held liable for the medical negligence allegedly incurred by the physicians with medical privileges; (2) The hospital and SISSO complied with the obligation to protect the health of the patient; and (3) The hospital and SISSO's employed personnel did not deviate from the applicable standards of care.

First of all, in medical malpractice suits under the laws of Puerto Rico, as the one at hand, "a plaintiff can sue a doctor, a hospital, or both, as long as he/she can establish negligence on the part of each particular defendant." Hazel Calcaño v. Canetti Mirabal, 106 F. Supp. 2d 200, 204 (D.C.P.R. 2000).  The appearing party submits that, according to the particular circumstances of the case and the applicable doctrines, plaintiffs lack a valid cause of action against it.

Regarding the medical malpractice claim asserted directly against the hospital and SISSO under Puerto Rico Malpractice Law, in professional malpractice claims against physicians and hospitals, the minimum standard of medical care legally required in this jurisdiction, is "that level of care which, recognizing the modern means of communication and education, meets the professional requirements generally acknowledged by the medical profession." Oliveros v. Abreu, 101 D.P.R. 209, 226 (1973).  See also Lamas v. Borras, 16 F. 3d 473, 478 (1st Cir. 1994)("The burden of a medical malpractice plaintiff in the establishing the physicians' [and the hospital's] duty is more complicated than that of an ordinary plaintiff.  Instead of simply appealing to the jury's view

of what is reasonable under the circumstances, a medical malpractice plaintiff must establish the relevant national standard of care.").

In view of the above, it is a well-established precedent that to establish a *prima facie* case of medical malpractice, plaintiff must: (a) present evidence of the minimum medical care legally applicable to generalists, specialists and hospitals; (b) demonstrate that the defendants did not comply with a minimum standard of medical care in the treatment of his patient; and (c) demonstrate that not complying with the standard of care was the cause of the damages suffered by the patient. Medina Santiago v. Vélez, 120 D.P.R. 380, 385 (1988).  See also Lamas, 16 F. 3d at 748.

In order to hold a physician liable, plaintiffs must show by a preponderance of evidence that the physicians not only deviated from the medical standards of excellence in the treatment provided to the patient, but also that the deviation was the proximate cause of plaintiffs' alleged damages. Pérez Cruz v. Hospital La Concepción, 115 DPR 721 (1984); Núñez v. Cintrón, 115 DPR 598 (1984); Rodríguez Crespo v. Hernández, 121 DPR 639 (1988).

According to the aforementioned, there is a presumption of correctness in the medical treatment provided and it is plaintiffs' burden to rebut that presumption with competent medical testimony.  Oliveros v. Abreu, supra., at 229.  Se also Rolón-Alvarado v. Municipality of San Juan, 1 F. 3d 74, 78 (1st Cir. 1993)("Because medical knowledge and training are critical to demonstrating the parameters of a health-care provider's duty, the minimum standard of acceptable care is almost always a matter of informed opinion.  Thus, it must ordinarily be established by expert testimony.").

Furthermore, it has been decided by the Supreme Court of Puerto Rico, that in arriving at a diagnosis, a mistaken medical judgment is acceptable as a defense under any of the following circumstances: (a) when there is a reasonable doubt as to the condition or illness of the patient; (b) when the acknowledged medical authorities are split as to which is the diagnostic procedure to be

followed; or (c) when the diagnosis is made after a conscientious effort by the physician to inform himself of the symptoms and of the condition of the patient.  Oliveros v. Abreu, supra, at 227.

Finally, as to the damages, the jury must weigh the damages following a strict base of correspondence with the evidence and procuring that the indemnification does not turn into an industry.  Agosto Vázquez v. Woolworth, 143 D.P.R. 76, 81 (1997).  The purpose of Article 1802 of the Puerto Rico Civil Code is to repair damages and not to punish defendants.  Id.  Therefore, plaintiff has the burden to establish, without speculating, that their damages were directly caused by the appearing defendant.  Saurí v. Colón Martínez, 127 D.P.R. 900 (1991); Vaquería Garrochales v. APPR, 106 D.P.R. 799 (1978); and, Masa v. A.F.F., 96 D.P.R. 856 (1969).  The appearing party has to perform discovery to corroborate the extension of damages and the causation between those damages and the medical incident alleged in the Complaint.

## C.   Defendants Dr. Gloria Ponce Tua, Her Conjugal Partnership and SIMED (PRM16569)

### Factual Contentions

Dr. Gloria Ponce Tua is a duly licensed physician with specialty in internal medicine in accordance with the state and federal laws. At the times of the incidents alleged in the Complaint, Dr. Ponce Tua, engaged in the performance of her specialty with clinical privileges at Mayaguez Medical Center. She also has an appointment, as "Instructor Ad Honorem" granted by "Escuela de Medicina de Ponce" since July 1, 2006 in order to provide teaching to intern/residents or medical students. Based upon that appointment, she is covered by state law; PR Law 136 dated July 27, 2006; which provides to her immunity in alleged medical malpractice cases while she is performing her duties. See 24 PR Law Ann. Secc. 10031 et als.

In the instant case, Dr. Ponce-Tua, as physician and instructor, provided Mrs. Benita Javier with medical care on her admission dated October 3, 2009. Her services were requested due to the fact that she is an unattached patient. After evaluating Mrs. Javier, Dr. Ponce places a consultation to a cardiologist for further care and treatment. Dr. Torres Aguiar, cardiologist, then recommends to conduct a catheterization, which was performed by him on October 6, 2009.

In the early morning of October 7, 2009, Mrs. Javier developed a series of complications, which were handled by residents who called Dr. Ponce. When Dr. Ponce arrived at the Hospital, the patient was been managed by residents and Dr. Torres Aguiar, but unfortunately Mrs. Javier passed away.

**Legal Contentions**

In the jurisdiction of the Commonwealth of Puerto Rico, there is a presumption that physicians and hospitals exercise a reasonable degree of care in the treatment of patients and that the prescribed treatment has been adequate. Rodriguez v. Fenix Co., 100 D.P.R. 871, 876 (1972); Rodriguez Crespo v. Hernandez, 121 D.P.R. 639-650 (1998). Therefore, in a medical malpractice action, the plaintiff has the obligation to present sufficient evidence to defeat said presumption, and the evidence must show something more than a mere possibility that the injury was caused by the physicians or the hospital's failure to comply with the prescribed professional standards applicable to each of them. No presumption of medical negligence is inferred from the fact that the patient has suffered damages or that his treatment did not accomplish the desired result. At all times, Mrs. Javier received quality health care. It has long been held that Plaintiffs have to establish a causal relationship not based upon conjectures and/or speculations. See Lopez Delgado v. Dr. Canizarez, 2004 TSPR 160.

Plaintiffs' cause of action is predicated on the substantive provisions of the Puerto Rico Civil Code under Article 1802 (31 L.P.R.A. section 5151 - our Law of Torts) for an alleged malpractice. Article 1802 states:

> Obligation when damage caused by fault or negligence. A person who by an act or omission caused damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity.

Plaintiffs have no evidence to substantiate any breach of duty by Dr. Ponce-Tua in order to legally obtain an indemnification against her under Article 1802 of the PR Civil Code. The following applicable jurisprudence is cited in support of our contention: Perez Cruz v. Hospital La Concepcion, 115 D.P.R. 721 (causal relationship); Rosado v. E.L.A., 108 D.P.R. 789, and Vda. De Lopez v. E.L.A., 104 DPR 178 (there is a presumption of correctness in medical treatment rendered upon the patient.); Reyes v. Phoenix Assurance Co., 100 D.P.R. 662; Rivera v. E.L.A., 99 D.P.R. 859; Viuda de Torres v. Wombel, 99 D.P.R. 859 (expert testimony).

It should be noticed that in this case Dr. Ponce is covered by the provisions of 24 PR Law Ann. Secc 10031, specifically Secc 10037, which grants an immunity of her services against medical malpractice cases. Plaintiffs have to address their complaint against the Commonwealth of Puerto Rico.

**D.      Defendant SIMED (as alleged insurer of Dr. Roberto Torres-Aguiar)**

**Factual Contentions**

On January 19 2001, SIMED was summoned with an Amended Complaint filed on December 30, 2011. SIMED is brought to this case as alleged insurance carrier of Dr. Roberto Torres Aguiar. See Docket No. 19.

After verifying coverage for the medical incident alleged in the Amended Complaint, at the date this was claim received in SIMED, there is <u>no</u> **Claims Made policy** issued on behalf of Dr. Roberto Torres Aguiar.

The only **Claims Made policy** issued by SIMED on behalf of Dr. Roberto Torres Aguiar was policy number PRM-2738, which had an effective date from July 15, 2009 to July 15, 2010, and an expiration date of July 15, 2010, with retroactive date of July 15, 1991. **This policy was cancelled on June 18, 2010 due to non-payment of the premium.**

The above policy, in pertinent part, establishes the following:

"...

**I. COVERAGE AGREEMENTS**

The Syndicate will pay on behalf of the Insured, with respect only to his practice within the

Commonwealth of Puerto Rico:

**COVERAGE A - INDIVIDUAL PROFESSIONAL LIABILITY**

All sums which the Insured shall become legally obligated to pay as damages because of injury to which this policy applies caused by medical incident, occurring on or after the retroactive date, **for which a claims is first made against the Insured and reported to the Syndicate during the policy period**, arising out of the rendering of or failure to render professional services by the Insured as a physician, surgeon or dentist.

...
Also, among its exclusions the policy states the following:
"...
II.      EXCLUSIONS

      **This policy <u>does not</u> apply:**

...

          (9)    **to any claim first made against the Insured** period to the inception date or

                  **after termination date of this policy**, provided however, coverage may

otherwise be afforded for claims made subsequent to the termination date of

this policy pursuant to Sections IX, X, and XI;

...”

## Legal Contentions

**“Claims Made policies”**, which are used to insure against professional malpractice, differ

from traditional 'occurrence' policies primarily in scope of risk against which they insure; **in a**

**claims made policy, coverage is effective if the negligent or omitted act is discovered and**

**brought to the attention of the insurance company during the period of the policy, [...]**, while

in an occurrence policy, coverage is effective if the negligent or omitted act occurred durin the period

of the policy, whatever the date of the claim against the insured.” Medical Inter Ins. Exchange of

New Jersey v. Health Care Ins. Exchange, 278 N.J. Super. 513, 651 A.2d 1029 (App. Div. 1995).

See also, Mercado-Boneta v. Administracion del Fondo del Seguro de Compensacion al Paciente,

125 F.3d 9 (1st Cir. 1997).(“An occurrence policy, which provides coverage for occurrences within

the policy period regardless of when the claim is made, is distinguished from a **claims made policy**,

**which only covers the insured for claims that are actually made during the policy**

**period**”)(emphasis added).


II.     **FACT AND EXPERT WITNESSES**

    A.     **Plaintiffs**

    **Fact witnesses**

    1.     Sandra González Javier, decedent's daughter.

    2.     Cecilia Javier Pérez, Plaintiff, decedent's sister.

    3.     Sonia Noemí González Javier, deceased's daughter.

4.      José Luis González Javier, deceased's son.

5.      José Manual González Javier, deceased's son.

6.      Samuel González Javier, deceased's son.

7.      Luiz González Muñiz, deceased's husband.

8.      Dra. Ponce Tua, Defendant, treating physician.

9.      Dr. Roberto Torres Aguiar, Defendant treating interventional cardiologist.

Plaintiff has not received Defendants Hospital/SISSO's Rule 26 initial disclosures.  Thus, Plaintiff does not know Defendants' submission of individuals likely to have information which support Defendant's claims or defenses. Plaintiff reserves the right to call as witnesses all witnesses announced by the Defendants in this case, and also, to announce additional witnesses that may be identified throughout the process of discovery. Plaintiff reserves the right to amend this witness list as the litigation proceeds without imposition of any presumption for or against the amendment.

**Expert witnesses**

Dr. Carl W. Adams, board certified surgeon, thoracic cardio-vascular, critical care. *Curriculum Vitae, Fee schedule* was provided to Defendants, when fact discovery concludes, he will provide an expert report on liability of doctors and hospital.

Additional expert(s) will be timely announced by plaintiffs.

**B.      Defendant Mayaguez Medical Center Dr. Ramón Emeterio Betánces, Inc., Continental Insurance Company and Sistemas Integrados de Salud del Suroeste ("SISSO")**

Mayagüez Medical Center Dr. Ramón Emeterio Betánces, Continental Insurance Company and SISSO have not yet determined which witnesses will be called during trial.  The following

witnesses may have personal knowledge regarding the medical care and treatment provided to Mrs. Javier Pérez at Mayagüez Medical Center Dr. Ramón Emeterio Betánces and SISSO:

1.      Dr. William Cruz Antequera – Emergency Room Physician who treated Benita Javier Pérez at Mayagüez Medical Center Dr. Ramón Emeterio Betánces;

2.      Dr. Juan Rivera – Emergency Room Physician who treated Benita Javier Pérez at Mayagüez Medical Center Dr. Ramón Emeterio Betánces;

3.      Dr. Gloria I. Ponce Tua – Codefendant, Internist and attending physician of Benita Javier Pérez at Mayagüez Medical Center Dr. Ramón Emeterio Betánces;

4.      Dr. Orlando Marini – Cardiologist who treated Benita Javier Pérez at Mayagüez Medical Center Dr. Ramón Emeterio Betánces;

5.      Dr. Roberto Torres Aguiar – Codefendant and cardiologist who treated Benita Javier Pérez at Mayagüez Medical Center Dr. Ramón Emeterio Betánces;

6.      Dr. Raúl García Rinaldi – Cardiovascular Surgeon who treated Benita Javier Pérez at Mayagüez Medical Center Dr. Ramón Emeterio Betánces;

They will all testify as to the medical care and treatment provided to Mrs.Javer Pérez at the Mayagüez Medical Center Dr. Ramón Emeterio Betánces.  The appearing party reserves its right of amending its list of witnesses after the conclusion of discovery.

**Expert Witnesses**

Mayagüez Medical Center Dr. Ramón Emeterio Betánces and SISSO have not yet determined which individuals will testify as expert witnesses in this case.  This determination will not be made until plaintiff produce its expert evidence.  The appearing party reserves the right to name any expert witnesses it may deem appropriate once plaintiff announces its experts and submits their reports.

**C.**      **Defendants Dr. Gloria Ponce Tua, Her Conjugal Partnership and SIMED (PRM16569)**

**Fact witnesses**

1.      Dr. Ponce Tua, will testify as to treatment she rendered to the patient and her duties as Instructor in this case.

**Expert Witnesses**

1.      At this moment no decision has been made as to hire an expert witness. However after plaintiffs' fact and expert's discovery concludes an expert will be retained, if necessary.

**D.**      **Defendant SIMED (as alleged insurer of Dr. Roberto Torres-Aguiar)**

**Fact witnesses**

1.      Mrs. Maria del Carmen Alfonso Valle, SIMED's Underwriter Manager, will testify as to the veracity of the information contained in the Sworn Statement submitted by her.

**Expert Witnesses**

2.      SIMED, as alleged insurance carrier of Dr. Roberto Torres Aguiar, has not consulted any expert witness.

**III.**      **DOCUMENTARY EVIDENCE**

**A.**      **Plaintiffs**

1.      Medicare Health Insurance cards of Benita Javier Pérez. (González 01).

2.      Birth Certificate of José Luis González Javier. (González 02).

3.      Birth Certificate of Sonia Noemí González Javier. (González 03).

4.      Birth Certificate of José Manuel González Javier. (González 04).

5.      Birth Certificate of Sandra González Javier. (González 05).

6.      Birth Certificate of Samuel González Javier. (González 06).

7.      Marriage Certificate of Ángel Luis González Muñiz and Benita Javier Perez. (González 07).

8.      Declaratoria de Herederos de Benita Javier Pérez. (González 08).

9.      Notificación de Sentencia regarding the Declaratoria de Herederos. (González 09).

10.     Medical records of Benita Javier Pérez from Mayaguez Medical Center-Dr. Ramón Emeterio Betances, Inc. (González 010-0213).

11.     Medical Records from Hospital San Carlos, Moca,

12.      Dr. Juan M. Corona Medical Records.

13.     Mayaguez Medical Center/SISSO's hospital protocols, rules and regulations.

Plaintiffs may add documents are identified and obtained to support Plaintiffs' claims or defenses.

**B.      Defendant Mayaguez Medical Center Dr. Ramón Emeterio Betánces, Inc., Continental Insurance Company and Sistemas Integrados de Salud del Suroeste ("SISSO")**

Mayagüez Medical Center Dr. Ramón Emeterio Betánces, Continental Insurance Company and SISSO have not yet determined the documentary and/or demonstrative evidence that will be used at trial.  This determination will not be made until the conclusion of discovery.  The appearing parties reserve the right to announce any documentary and/or demonstrative evidence it may deem appropriate once the discovery has been completed.  Nonetheless, we anticipate that the medical record of the patient Benita Javier Pérez at the Mayagüez Medical Center Dr. Ramón Emeterio Betánces would be used.

**C.     Defendants Dr. Gloria Ponce Tua, Her Conjugal Partnership and SIMED (PRM16569)**

1.     Dr. Gladys Ponce-Tua, curriculum vitae.

2.     Dr. Ponce Tua's appointment letter from Escuela de Medicina de Ponce.

3.     Mrs. Benita Javier Perez (RIP), hospital record at Mayaguez Medical Center(October 3, 2009-October 7, 2009).

**D.     Defendant SIMED (as alleged insurer of Dr. Roberto Torres-Aguiar)**

Claims made policy number P**RM-2738**, issued on behalf of Dr. Roberto Torres Aguiar which was not in force at the time of the claim was received in SIMED.

## IV.     DISCOVERY TO BE CONDUCTED

**A.     Plaintiffs**

1.     Inspection of Protocols at Mayaguez Medical Center/SISSO:

       April 15, 2011; starting at 10:00am; at Mayaguez Medical Center.

2.     Mayaguez Medical Center/SISSO 30(b)(6) – April 29, 2011; starting at 10:00am; at Matta & Matta, Ponce, PR.

3.     Dra. Gloria Ponce Tua – April 29, 2011; starting at 1:30pm; at Matta & Matta, Ponce P.R.

4.     Dr. Roberto Torres Aguiar – will be scheduled upon appearance and lifting entry of default.

5.     Depositions of Defendants' expert(s)-August 26, 2011; starting at 9:30 am; at Indiano & Williams, PSC.

Since Defendants have not yet designated their experts, Plaintiffs reserve the right to announce any additional experts once Defendants' experts have been identified.  Plaintiffs

reserve the right to conduct additional discovery if it becomes necessary as litigation proceeds.

**B.    Defendants**

1.    State Court Plaintiffs – August 24, 2011; starting at 9:30 am; at Indiano & Williams, PSC.

2.    All Federal Case Plaintiffs and remaining State Court Plaintiffs – August 25, 2011; starting at 9:30am; at Indiano & Williams, PSC.

3.    Deposition of Plaintiffs' experts-July 1, 2011; starting at 10:30 am, at a place to be designated. These depositions will be coordinated with defense attorneys' and Plaintiffs experts' calendars.

Mayagüez Medical Center Dr. Ramón Emeterio Betánces, Continental Insurance Company and SISSO  intend to notify interrogatories and request for production of documents to be answered by plaintiffs and/or other parties to this action.  In addition, Mayagüez Medical Center Dr. Ramón Emeterio Betánces, Continental Insurance Company and SISSO intend to depose plaintiffs and/or other parties to this action, as well as any factual and/or expert witnesses announced by them. Furthermore, Dr. Gloria Ponce Tua, Her Conjugal Partnership and SIMED (PRM 16569)  will be providing plaintiffs with Interrogatories within the next 10 days. A discovery schedule has been already agreed by the parties and notified to this Honorable Court.

**C.    DISCOVERY DEADLINE**

1.    Deadline for all discovery: September 30, 2011.[1]

**D.    DISPOSITIVE MOTIONS AND OTHER DEADLINES**

---

[1] Set by the Honorable Court. *See* Docket No.10.

1.    Motions for summary judgment: November 30, 2011.[2]

2.    Joint Proposed Pretrial Order: February 29, 2012.[3]

3.    Pretrial and Settlement Conference: March 14, 2012 at 9:00 am.[4]

4.    Trial: March 26, 2012 at 9:00am.[5]

## V.    **MAGISTRATE JUDGE**

### A.    **Plaintiffs**

Plaintiffs consent to proceed before a U.S. Magistrate Judge.

### B.    **Defendant**s

Dr. Gloria Ponce Tua, Her Conjugal Partnership and SIMED (PRM 16569) do not consent

to proceed before a U.S. Magistrate Judge.

## VI.    **PROPOSED DEADLINES**

Additionally, parties have agreed to the following deadlines for production of expert witness

reports:

May 29, 2011          Deadline for Plaintiff 's Expert Reports

July 29, 2011          Deadline for Defendants' Expert Reports

## VII.    **Plaintiffs' Proposals**

---

[2] *Id.*

[3] *Id*.

[4] *Id*.

[5] *Id*.

_____Plaintiffs foresee that, due to the nature of the case, summary judgment motions are very unlikely. Therefore, we propose that the Pre-Trial be held in October and that the Trial be held in November. Plaintiffs position regarding SIMED's request for dismissal regarding Dr. Torres Aguiar's policy is that SIMED is already a party to this action as insurer for Dr. Ponce Tua. If The Court deems it appropriate to dismiss as to insurer Dr. Torres Aguiar, such dismissal should be without prejudice.

### Defendants' Proposals

Dr. Gloria Ponce Tua, Her Conjugal Partnership and SIMED (PRM 16569)  foresee that, as soon as all documentation regarding Dr. Ponce's appointment by Escuela de Medicina de Ponce is complete, she will be entitled to the state law immunity as provided by the LAW. Thus a dismissal of plaintiffs' action against Dr. Ponce should be granted.

**WHEREFORE**, the appearing parties respectfully request from this Honorable Court to **TAKE NOTICE** of the above and **APPROVE** the proposed schedule.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 19th day of April, 2011.

**CERTIFICATE OF SERVICE**: We hereby certify that on this same date, the preceding motion was filed with the Court's CM/ECF system which will notify the counselors of record**.**

*Plaintiffs' Counsel*:

**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street; 3rd Floor
San Juan, Puerto Rico 00912
Tel.: (787) 641-4545 / Fax (787) 641-4544
jeffrey.williams@indianowilliams.com

 s/ Jeffrey M. Williams

**JEFFREY M. WILLIAMS**
**USDC PR Bar No. 202104**

*Counsel for defendants Mayaguez Medical Center-Dr. Ramon E. Betances Inc.*
*SISSO and Continental Insurance Company.*
**DE CORRAL & DE MIER**
130 Eleanor Roosevelt
San Juan, Puerto Rico 00918-3105
Tel. (787)758-0644 / Fax (787)758-0687
nalomar@dcdmlaw.com
 s/ Nanette Alomar Camacho
**NANETTE ALOMAR CAMACHO**
**USDC PR Bar No. 214810**

Counsel for defendants SIMED, as alleged insurance carrier of Dr. Roberto Torres Aguiar/
NIDIA I. TEISSONNIERE RUEDA
SIMED
Centro Europa Building
Ponce de León 1492, Suite 501
San Juan, PR 00907-4117
P.O. Box 9023875
San Juan, PR 00902-3875
TEL: (787) 641-1437
FAX: (787) 625-1437
E-mail: teissonnieren@simedpr.com
 s/ Nidia I. Teissonniere Rueda
**NIDIA I. TEISSONNIERE RUEDA**
**USDC NO. 228209**

*Counsel for Defendant Dr. Gloria I. Ponce*
*Tua and SIMED:*

/s/Anselmo-Irizarry Irizarry
Anselmo Irizarry Irizarry
U.S.D.C.P.R. No. 206007

MATTA & MATTA, PSC LAW FIRM
Comercio #94 Altos
PO Box 335060
Ponce, Puerto Rico  00733-5060
Telephone:     (787)  844-0220
Telecopier:    (787)  844-0279
airizarry@mattaymattapsc.com